## W. X. HUBER CO. *v.* UNITED STATES

**No. 7590.**—Invoices dated Shanghai, China, January 29, 1940, etc.
        Certified January 30, 1940, etc.
        Entered at Los Angeles, Calif., March 11, 1940, etc.
        Entry No. 7452, etc.

(Decided May 10, 1948)

*Harper & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector,* special attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement taken by the importer under the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501) from findings of value made by the United States appraiser at the port of Los Angeles on certain linen articles and lace articles exported from China during the period from January to April 1940.

The merchandise was entered at certain prices for each item, and the appraiser advanced the unit value of each item. Appraisement was made on the basis of export value, which is defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (d)), and there does not seem to be any question with respect to foreign value as defined in section 402 (c) of the same act, as amended, for the reason that it appears that merchandise of the character of that in issue was not, at the time of exportation of the merchandise involved, made or sold for home consumption in China, but was purely for the export trade.

Briefly stated, the plaintiff's contention, as set forth in the brief filed in its behalf, is that the merchandise in issue consists of so-called job-lot or unselected merchandise, which, according to the method of doing business in that class of merchandise in China, was available to purchasers at a lower price than would obtain for selected merchandise of the same type. From the evidence offered by the defendant on the trial of the issue, it appears that appraisement was made on the basis of prices which then obtained for so-called selected merchandise.

The plaintiff established through its sole witness, a partner in the importing firm, that in December 1939, he sailed for China, and upon his arrival he devoted some time to determining the nature and condition of the market in linen and lace articles of the kind here involved. These articles are made by home workers and are gathered together by wholesalers or so-called "manufacturers" and offered for sale to the trade.

According to this witness there were three methods by which such or similar articles were offered for sale in China. By the first method, the purchaser ordered certain items to be made, in which case the highest price was charged. The second method was by the purchaser selecting various items according to sample or by inspection of the offered items, in which case a lower price was charged. The third method was by purchasing job lots of items. According to the

witness this method was something in the nature of a grab-bag procedure, the merchandise being piled on a floor or a table, consisting of any possible combination of types of articles, including doilies, scarves, tablecloths and napkins, etc., and no inspection or examination of the pile was permitted by the seller. The sale price appears to have depended upon the bargaining abilities of the seller and purchaser, and the latter would appear to have needed a combination of intuition, persuasiveness, and luck in order to come out of the transaction with any degree of advantage.

The record is somewhat confusing as to the nature of the merchandise encompassed by the average job lot. The witness apparently was not at home in the English language, and from certain of his statements it would appear that only inferior quality merchandise and the rejects of the selected merchandise went into the job-lot pile, while, on the other hand, from certain other of his statements it would appear that the job lot contained a mixture of all qualities, types, and sizes of merchandise. Furthermore, the witness several times stated that he bought all of the merchandise involved in job lots, but on cross-examination he gave testimony indicating that only one of the shipments before the court, that involved in reappraisement No. 141857–A, covered job-lot merchandise.

Be that as it may, however, the plaintiff's case is based upon the job-lot theory and upon the testimony of the witness that the prices he paid for the job lots were the prices at which any person could buy under the same conditions at the same time. Plaintiff contends that such prices represented the freely offered prices to all purchasers within the meaning of the export value statute. The difficulty in this contention is that, assuming the correctness of the facts upon which it is based, the prices paid by the witness for the job lots did not represent *the freely offered prices for the individual items or sets of items* contained in the job lot, but represented the *freely offered price for the whole lot,* undivided, unapportioned, unassorted, unselected, and virtually unseen. At some time after purchase of the merchandise it apparently was sorted and segregated, for the invoices bear prices *for each item.* There is no explanation as to how the price *for each item* was arrived at, and as the merchandise appears on the invoices it is not the hodge-podge which the witness said he bought but definite quantities of each type of merchandise, bearing identifying manufacturers' item numbers.

We are here concerned with the valuation for customs purposes of the merchandise *in the condition in which imported.* It may well be that the purchaser bought merchandise unselected in every sense; he may have been a good bargainer, was lucky, and bought to advantage, but he did not import and seek to enter an undivided lot of merchan-

dise; he brought in assorted, identified items, evidently in the condition in which merchandise which the witness described as selected was generally offered in China.

I find nothing in the record which would warrant findings of value for the merchandise in issue other than those returned by the appraiser. I therefore hold that export value, as defined in section 402 (d), *supra*, is the proper basis for the determination of the value of the merchandise here involved, and that such export value for each item is the appraised value.

Judgment will issue accordingly.