(Reap. Dec. 9190)

FELCO FABRICS CORP. *v.* UNITED STAGES

Entry No. 923544, etc.

(Decided July 11, 1958)

*Mary Rehan* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: This appeal for reappraisement involves the value, for duty purposes, of certain wool piece goods, exported from Glasgow, Scotland, between June 1, 1955, and February 8, 1956, and entered at the port of New York. The importer is the selling agent or distributor for various mills in the United Kingdom.

The following tabulation represents the invoiced, entered, and appraised values in each case:

| Reap-praise-ment No. | Invoice price per yard | Entered value per yard | Appraised value per yard |
|---|---|---|---|
| 270230–A | 8/0 | 6/0 | Items A @ 6/1<br>"  B @ 6/0<br>Balance at invoiced units, all **net**, packed. |
| 265912–A | 7/0 | 7/0 less 3⅓% | 12/0 plus packing |
| 270229–A | 6/6 plus buying commission. | As invoiced less buying commission. | "    "    " |
| 270590–A | 6/6 plus buying commission. | " | "    "    " |
| 270591–A | 6/6 plus buying commission. | " | "    "    "<br>Except items marked X appraised at invoice unit value, net plus packing. |
| 273143–A | 8/0 plus buying commission. | " | 12/0 plus packing |
| 274164–A | 6/6 plus buying commission. | " | "    "    "<br>Except item marked X appraised at 7/6 plus packing. |

ALL PRICES ARE BRITISH CURRENCY IN SHILLINGS AND PENCE

Plaintiff claims the involved merchandise to be job lots or "jobs clearing lines," as described on the invoices. The importer contends for lower values than those at which the involved items were appraised, arguing that the proper export value of the merchandise under consideration is the entered value in each case, or an export value of 6 shillings, 6 pence per yard, plus 1 shilling commission.

Plaintiff introduced the testimony of Mr. Hyman Feld, president of the importing company, who described the circumstances under which the involved goods were purchased, stating that, while in Europe, he made arrangements with a Mr. Lou Ockrim of the firm of I. Ockrim & Sons, Ltd., Glasgow, Scotland, relative to the purchase of the goods and that the merchandise in question was purchased as "job lots." He stated that, in the involved transactions, there was no selection or control exercised by him either as to the colors of the goods or the nature of the patterns contained therein (R. 7–11).

Certain correspondence had with Mr. Ockrim relative to the imported merchandise was introduced in evidence by the plaintiff (plaintiff's collective exhibit 1). In a letter, dated May 11, 1955, reference is made to the purchase of certain goods sold to the importer as "job clearing line, hand woven tweeds." In a further letter addressed to the importer dated May 23, 1955, page 2, there appears the following: "* * * the cost of the material is net 6/6 d. per yard

and if you get 9/– d. or more, let us have your suggestion regarding the profits * * *." It further appears from said correspondence that Mr. Ockrim, upon examination, found a certain percentage of the pieces purchased to be unsatisfactory in quality. The record discloses that, subsequently, an allowance or credit was made by the examiner in the appraisement of certain items not up to standard. Plaintiff's witness testified that, except for a purchase at 8 shillings, these job lots were purchased at 6 shillings, 6 pence, plus 1 shilling paid as buying commission (R. 15). Mr. Feld stated, further, that he bought all of such merchandise offered to him and that he does not know whether the seller freely offered this merchandise in the ordinary course of business to anyone else in the United States at the time of exportation. He testified that merchandise such as that imported was sold for home consumption at a price believed to be 6 shillings. While the witness would not state that the merchandise was "damaged," he stated that it was purchased as an "odd lot" and was no longer "regular" merchandise, but consisted of "odd patterns and a conglomeration of patterns" (R. 19). The witness further stated that, at the time of exportation of the involved goods, he sold Harris tweeds in "regular" quantities at a price of 12 shillings.

Mr. Feld further testified that in the case of "regular" merchandise in hand-woven Harris tweeds, the pieces run from 85 to 95 yards, whereas the yard lengths of merchandise such as here in question were "mixed" (R. 24), plaintiff's witness stating, in this connection, that such odd yardages and particularly such low yardages as here imported would never be accepted as regular goods by any customer engaged in such trade (R. 36). Reference to the pertinent appeals discloses the following yard lengths of the merchandise:

Reap. No. 270229–A:
 Pieces range from 70¾ to 86 yards, and, in addition, one piece at 37½ yards, and one piece at 69½ yards.

Reap. No. 270230–A:
 26 pieces ranging from 61½ yards to 69½ yards;
 112 pieces ranging from 70 yards to 79 yards;
 One piece at 80 yards, and, in addition, one piece at 37¼ yards;
  one piece at 53 yards;
  one piece at 59¼ yards; and
  one piece at 59½ yards.

Reap. No. 265912–A:
 One piece at 69½ yards;
 7 pieces ranging from 74½ yards to 79¾ yards.

Reap. No. 270590–A:
 5 pieces ranging from 76¾ yards to 78¼ yards.

Reap. No. 270591–A:
 One piece at 37½ yards;
 one piece at 47¼ yards;
 one piece at 50¼ yards;
 one piece at 61 yards;

one piece at 68½ yards;
one piece at 69½ yards;
43 pieces ranging from 70 yards to 79¾ yards;
18 pieces ranging from 80 yards to 83 yards.

Reap. No. 273143–A:
One piece at 52 yards;
one piece at 89 yards;
7 pieces ranging from 94½ yards to 98 yards;
one piece at 102 yards;
one piece at 103¾ yards.

Reap. No. 274164–A:
One piece at 49.4 sq. yards;
6 pieces ranging from 57.8 sq. yards to 59.8 sq. yards;
23 pieces ranging from 60 sq. yards to 65.7 sq. yards.

Counsel for the plaintiff, at the trial herein, stated that the importer's complaint in this case was "not a question of length at all, but it's the question of the merchandise that is put together * * *" (R. 47). The record discloses that, on certain pieces of merchandise imported, the examiner, after inspection, credited an allowance to the importer because "said" pieces were not standard merchandise "as far as perfection is concerned" (R. 30).

With respect to sales by others in the country of exportation, plaintiff's witness testified that he did not know whether any other exporters of such or similar merchandise freely offered the goods for export to the United States at or about the time of exportation of the merchandise herein involved (R. 31). The record further discloses that there were no written contracts covering the purchase of the goods at bar.

Mr. John G. Thompson, the customs examiner of the imported merchandise, testified that, at the time of exportation of the goods at bar, he had examined merchandise of the same kind or type as that here imported, his experience in such connection covering a period of 19 years; that the "price" for such goods was 12 shillings per yard; that, in the case of the imported merchandise, he appraised some of the pieces at 12 shillings per yard and, in certain instances, appraised the pieces at the invoice price or less in those cases where the importer produced a credit bill indicating that an allowance with respect to the price was given to the plaintiff by the exporter; that in cases where he was not given any credit bills or in which he had not been able to examine the merchandise, the said goods were passed at a value of 12 shillings per yard, on the premise that, where the mill or the seller did not make any allowance, there was no credit forthcoming or applicable to the goods (R. 42–43); that, upon examination of the imported merchandise, he found it in all respects similar to the Harris tweed merchandise stamped "Genuine Harris Tweed."

Respecting the usual length of importations from various manufacturers of this merchandise from Scotland, defendant's witness testified

that the yardage runs on an average "from 75 yards up to possibly 90 or better," and that, on occasion, it runs as low as 70 yards. In this connection, Mr. Thompson stated that whether the bolt ran 59 yards, 70 yards, or 75 yards, the value of the merchandise per yard would be the same and that appraisement would always be based upon a yardage basis at the same price, regardless of the length of the bolt or the piece (R. 46). On cross-examination, defendant's witness testified that the 37- and 37½-yard lengths in the involved shipments were the exception to the rule, rather than the usual length, in these invoices.

Mr. Thompson further testified that appraisement of the items involved was made on the basis of an export value for similar merchandise; that appraisement was not made on the basis of foreign value for similar merchandise, inasmuch as an allowance of 2½ per centum cash discount is given in the home market, which is not allowed on sales for export; and that, accordingly, the export value is higher.

In *W. X. Huber Co.* v. *United States*, 20 Cust. Ct. 447, Reap. Dec. 7590, the plaintiff contended as to certain linen and lace articles exported from China that the merchandise in issue consisted of so-called job-lot or unselected merchandise, which, according to the method of doing business in that class of merchandise in China, was available to purchasers at a lower price than would obtain for selected merchandise of the same type. It appeared that appraisement of the involved goods was made on the basis of prices which then obtained for so-called selected merchandise.

In upholding the appraised value of the merchandise, the court, in the *Huber Co.* case, *supra*, page 449, stated:

Be that as it may, however, the plaintiff's case is based upon the job-lot theory and upon the testimony of the witness that the prices he paid for the job lots were the prices at which any person could buy under the same conditions at the same time. Plaintiff contends that such prices represented the freely offered prices to all purchasers within the meaning of the export value statute. The difficulty in this contention is that, assuming the correctness of the facts upon which it is based, the prices paid by the witness for the job lots did not represent *the freely offered prices for the individual items or sets of items* contained in the job lot, but represented the *freely offered price, for the whole lot,* undivided, unapportioned, unassorted, unselected, and virtually unseen. At some time after purchase of the merchandise it apparently was sorted and segregated, for the invoices bear prices *for each item.* There is no explanation as to how the price *for each item* was arrived at, and as the merchandise appears on the invoices it is not the hodge-podge which the witness said he bought but definite quantities of each type of merchandise, bearing identifying manufacturers' item numbers.

We are here concerned with the valuation for customs purposes of the merchandise *in the condition in which imported.* It may well be that the purchaser bought merchandise unselected in every sense; he may have been a good bargainer, was lucky, and bought to advantage, but he did not import and seek to enter an undivided lot of merchandise; he brought in assorted, identified items, evidently in the condition in which merchandise which the witness described as selected was generally offered in China. [Italics by the court.]

In the case at bar, examination of the invoices covered by these appeals indicates selectivity and identification of the merchandise in its condition as imported. In reappraisement No. 270230-A, covering entry No. 923544, there appears the following:

Marks on Bale—Order No. F 7726

Bale 1. Containing 4 pieces Hand Woven Tweeds 28/29'', 10/11 oz., 100% Wool Made in Scotland—Jobs cleaning line Piece No. 60101/162 63¼ yards.

Following this, there appears further identification of the pieces by yardage and price. Similar notations identifying specific bales by number, as well as identification of each piece by number, together with the number of yards in each piece contained therein, and the price per yard covering merchandise described as "Hand Woven Tweeds" appear in the other invoices covering the involved merchandise. It would thus appear in the case at bar, as in the *Huber Co.* case, *supra*, that some time after purchase of the merchandise contained in the so-called job lot, the pieces were sorted and segregated, the invoices bearing identifying manufacturers' item numbers and prices for all of the items covered by these appeals.

It appears from the communication addressed to the importer by Mr. Ockrim, dated May 23, 1955 (plaintiff's collective exhibit 1) that the exporter, upon examination of certain of the involved merchandise, "could find little wrong" with the goods, but was willing to forego a percentage "in order to help you with your customers." In a subsequent letter, dated September 13, 1955, the exporter informed the plaintiff herein that "We have for the past few years * * * sold lots of these goods as they lie in store, and can usually get 8/– per yard, but sometimes colours are not just right for the home market, so we have to leave certain parcels out."

Plaintiff, in this case, has not established that the prices paid for the goods were also the prices at which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of trade for home consumption or for exportation to the United States by either the exporter herein involved or by other producers in the country of exportation. It is settled that an invoice cannot of itself establish the statutory elements necessary to constitute the value of the merchandise. The prices stated in the invoices herein may or may not be in conformity with the valuation contemplated by the statute and the question of value is a matter of proof. *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593. Under the Tariff Act of 1930, the appraised value of imported merchandise is presumed to be its correct value, and the burden of overcoming the presumption is cast upon the appealing party. *Golding Bros. Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 395, T. D. 46926; *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502. I find nothing in the record herein which

would warrant findings of value for the merchandise herein involved other than those returned by the appraiser.

On the record here presented, I find as facts:

1. That the merchandise herein involved consists of hand-woven Harris tweed, exported from Glasgow, Scotland, between June 1, 1955, and February 8, 1956.

2. That the merchandise was appraised on the basis of export value (section 402 (d), Tariff Act of 1930), concededly the proper basis of valuation for the involved merchandise.

3. Plaintiff herein has not offered evidence of the prices at which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of trade for home consumption or for export to the United States by the exporter herein involved or by other producers in the country of exportation, or that the prices paid by the importer herein for the involved items represent the freely offered prices for the merchandise to all purchasers.

I find as matters of law:

1. That the presumption of correctness attaching to the appraiser's finding of value in each case has not been overcome.

2. That the proper basis for the determination of the value of the merchandise involved herein is export value, as that value is defined in section 402 (d) of the Tariff Act of 1930.

3. That such value is the appraised value in each case.

Judgment will be rendered accordingly.